IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONNA M. MILAM, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>  Defendant. ) | Case No. 3:04-cv-786-DGW |

**ORDER**

This matter is before the Court on the Petition for Review of the Commissioner's Decision Denying Benefits (entitled "Plaintiff's Brief") filed by the Plaintiff, Donna M. Milam, on May 20, 2005 (Doc. 18). For the reasons set forth below, and after a review of the record, the Commissioner's decision denying benefits is **AFFIRMED**.

**BACKGROUND**

The Plaintiff, Donna M. Milam, filed an application for Supplemental Security Income on May 30, 2001 alleging an onset date of November 19, 1986. (Tr. 48-49) The claim was initially denied on September 12, 2001 (Tr. 24) and upon reconsideration on March 8, 2002 (Tr. 29). Upon appeal, a hearing was scheduled for January 15, 2003. The Administrative Law Judge issued an unfavorable decision on January 29, 2003 (Tr. 11). The Appeals Counsel denied the Plaintiff's request for review on September 10, 2004 (Tr. 4). She filed her Complaint with this Court on October 29, 2004.

At the time of ALJ Brezina's opinion, the Plaintiff was 54 years old woman with a GED (Tr. 15, 284). She did not have any significant work experience (Tr. 15, 288-289). She alleges that she is disabled based on a number of physical and mental conditions. The Plaintiff's physical conditions include problems with her feet, knees, back, hip, hands, and migraine

headaches (Tr. 15). Her mental conditions included depression and post-traumatic stress disorder (Tr. 15). The specific medical reports and conditions will be evaluated in the next section.

**DISCUSSION**

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive. . . ."); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001); See also White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005) (stating that "the reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility" (quotation marks and citation omitted)). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). See also Sims v. Barnhart, 309 F.3d 424, 428 (7th Cir. 2002); Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. Golembiewski, 322 F.3d at 915; Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Lopez ex. rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).

Supplemental insurance benefits are available only to those individuals who can establish

"disability" under the terms of the Social Security Act.  The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. §416.920.  The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 §C.F.R. 416.920(b).  If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. §416.920(c).  If there is no severe impairment, the claiming is not disabled and the inquiry ends.  If there is a severe impairment, the ALJ next determines whether that severe impairment meets any of the impairments listed in the regulations.  20 C.F.R. §401, pt. 404, subpt. P, app. 1.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. 20 C.F.R. §416.920(e).  However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the

national economy. 42 U.S.C. §423(d)(2); 20 C.F.R. §416.920(f).

The Court first turns to the Plaintiff's strongest argument: that ALJ Brezina erred at step five of the analysis in finding that there are sufficient numbers of jobs that the Plaintiff could perform. When an ALJ includes "nonexertional limitations" in a hypothetical, he must consult a Vocational Expert. Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). The hypothetical question asked of a VE "must incorporate all of the claimant's limitations supported by medical evidence in the record." Hofslien v. Barnhart, 2006 WL 470178, *3 (7th Cir. 2006). This appears to be what ALJ Brezina did.[1] The Plaintiff, however, first argues that, essentially, the ALJ was testifying for the VE when he suggested the specific types of jobs that might be available to the Plaintiff. Throughout the VE's testimony, he indicated that he was having difficulty identifying jobs that existed within the hypothetical stated by the ALJ. After clearly exhibiting this difficulty and upon prompting by the ALJ, Dr. Upton indicated that there were 4,000 laundry worker positions at the medium unskilled level, 8,200 general office cleaner positions, 2,000 janitorial positions (Tr. 307-308). At no point during the hearing, however, did the Plaintiff, who was represented by counsel, object to this line of questioning. Nor did the

---

[1] The Plaintiff points out that ALJ Brezina made two factual errors regarding the VE's testimony as to jobs in the national economy and whether there are conflicts with the Dictionary of Occupational Titles. The Court's review of the transcript reveals that the VE did not mention the dictionary nor the number of jobs in the national economy. So, it appears that the ALJ was in error in his opinion. However, this error is not fatal. The Dictionary, or reference to it, is not required for a VE's testimony to be credible or valid. See generally, Donahue v. Barnhart, 279 F.3d 441, 446-447 (7th Cir. 2002). At the hearing, the Plaintiff's attorney raised no issue as to whether the VE's testimony was consistent with the Dictionary such that the remedial provision of Social Security Ruling 00-4p would apply. Also, while failing to specifically mention whether the numbers of jobs existed in the national economy, there can be no serious doubt that the VE was testifying about jobs that existed in the national economy as provided by the regulations. As such, the ALJ's errors are harmless.

Plaintiff inquire further into the types of difficulties that VE was having.  There was some discussion of whether a "moderate degree of impairment with regard to maintaining concentration, persistence, and pace" would limit the number of jobs available (Tr. 310).  However, the Plaintiff did not raise any argument with respect to fine finger manipulation or any conflict with the VE's testimony and the Dictionary of Occupational Titles.  As the Seventh Circuit has stated, "raising a discrepancy only after the hearing . . . is too late."  Donahue, 279 F.3d at 446-447 (7th Cir. 2002).  Finally, as noted below, this Court does not find any reversible error in ALJ Brezina's conclusions with respect to the Plaintiff's physical and mental limitations such that the hypothetical posed to the VE is in error.

The Plaintiff's next argument is that, at step two of the analysis, the ALJ erred in failing to find that her arthritis, in her hips, is a severe impairment.  This error, in turn, effected the ALJ's determination, at step 5, that she could perform work.   In his opinion, ALJ Brezina states with respect to arthritis:

> In regard to the claimant's alleged arthritis in her hip, I note that there is no objective evidence to support the degree of limitation alleged.  Consequently, I find that migraine headaches and alleged arthritis pain have had no more than a minimal effect on the claimant's ability to perform basic work related activities and are, therefore, 'non-severe' impairments.
>
> * * *
>
> Four months later, on June 14, 2002, the claimant reported that she had experienced hip pain intermittently for years, which had recently worsened.  Due to the claimant's alleged pain and visible limp, Dr. Tiffin concluded that she had a flare-up of arthritis in her hip.  However, I note that there is no objective evidence to support the degree of pain and limitation alleged.
> At the hearing, the claimant testified that she experiences pain in her legs, knees, left hip, and feet, which has required her to use a cane for the past eight months. . . . However, the claimant

> stated that she has received no treatment for her feet or left hip and that she has used only over-the-counter medication for arthritis in her hands.
>
> * * *
>
> In regard to her need for an assistive device, the claimant reported to Dr. Leung, on August 16, 2001, that she did not use an ambulatory device, but alleged to Dr. Vincent on the same date that she did.
>
> (Tr. 16, 18).

The ALJ's determination is supported by substantial evidence adequate to support his conclusion.

The Plaintiff argues that four separate pieces of evidence that relate to her arthritis show that she has a severe impairment: January 15, 2003 testimony that her left hip "hurts really bad if I stand on it for a very long time or even sitting" and that she has used a cane for the last eight months; medical reports from treating physician Dr. Robert Tifflin, dated June 14, 2002, June 25, 2002, and August 5, 2002, which indicate that she has arthritis (Tr. 259-261); agency physician Dr. Raymond Leung's notation that she walks with a limp (dated August 16, 2001) (Tr. 184); and agency physician Dr. Peter Biale's notation that she walks with a limp (dated January 18, 2001) (Tr. 193). As ALJ Brezina noted, the objective medical evidence does not support the Plaintiff's contention that her hip arthritis was a severe condition.[2] In addition to noting that the Plaintiff walked with a limp, Dr. Biale states: "Full range of motion of all joints was noted. There was no redness, swelling or thickening noted" (Tr. 193). Conspicuously absent is any

---

[2] The Plaintiff does not challenge ALJ Brezina's credibility assessment. ALJ Brezina found that the Plaintiff's testimony regarding the severity and extent of her limitations was not credible because she offered contradictory and inconsistent information to her doctors (Tr. 18-19).

indication that the Plaintiff suffers from arthritis.  Dr. Leung also did not note any arthritic conditions even though he did note a limp (Tr. 181-184).  Hence, there is no objective evidence, as ALJ Brezina stated in his opinion, that arthritis is the cause of the limitations the Plaintiff alleges, at least in 2001.

In 2002, Dr. Tifflin's records show a "flare up of hip arthritis" on June 14th that caused pain and a limp (Tr. 261).  Dr. Tifflin prescribed Untracet and Vioxx; however, the Plaintiff indicated, on June 28th, that the medication was not working.  The July 25, 2002 notation from Dr. Tifflin notes complaints of hip pain and the August 5, 2002 report gives a diagnosis of arthritis with complaints of hip pain (Tr. 259-260).  The parties seem to dispute whether Dr. Tifflin prescribed a walker or not: the records themselves are not the clearest; however, it does appear, on the right middle on page 261, that an "x-ray" and a "used walker" are mentioned and there is some discussion of where the walker can be acquired and the cost of an x-ray.   At the hearing, the Plaintiff stated that Dr. Tifflin told her to use a walker, but she instead preferred to use a cane because she gets "around better" with the cane – which she had been using for eight months (Tr. 291-292).  In any event, a September 25, 2002 visit to Dr. Tifflin did not indicate complaints about arthritis (Tr. 256) nor did an October 9, 2002 visit (Tr. 257).  In the following November 11, 2002 visit, the diagnosis listed was not arthritis, but "joint pain" and a pain management clinic referral was indicated (Tr. 258).  These later visits make no mention of a limp or the use of a walker or cane.  In addition, in February, 2002 and May, 2002 there is no mention of arthritis, even though the Plaintiff's other conditions were assessed (Tr. 263-264).

Thus, the record does not support a finding that the Plaintiff suffered from a severe impairment of arthritis for the requisite time period.  In making this conclusion, the Court is

mindful that ALJ Brezina did not articulate everything mentioned in the foregoing paragraphs. ALJ Brezina is required to "build an accurate and logical bridge from the evidence to his conclusion," Lopez, 336 F.3d at 539 (citation omitted), however, he is not required to analyze ever piece of evidence in the record. Haynes v. Barnhart, 416 F.3d 621, 626-627 (7th Cir. 2005). The record bears out the conclusion that there is insufficient evidence to support a finding that hip arthritis was a severe impairment. In addition, that ALJ Brezina did not order an x-ray in order to make his determinations regarding the hip arthritis is not error. Unlike the claimant in Smith v. Apfel, 231 F.3d 433 (7th Cir. 2000) there is no evidence of a years' long diagnosis of arthritis. The *only* indication that the Plaintiff suffers from hip arthritis are the June through August reports from Dr. Tifflin. In addition, notwithstanding the Plaintiff's testimony, there are no medical reports that suggest the type of on-going problem and pain, over the course of 12 months or more, that was apparent in Smith. This Court cannot find that the ALJ failed to develop a full and fair record.

The Plaintiff's second argument is that the ALJ erred in failing to properly credit her treating psychiatrist's findings. In assessing Dr. Walt R. Elliston's examination and finding that the Plaintiff suffered from "major depressive episode with psychotic features and post-traumatic stress disorder," ALJ Brezina concluded:

> Although given appropriate consideration, I find that Dr. Elliston's opinion regarding the degree of the claimant's limitations is out of proportion with the other substantial evidence contained in the record. Furthermore, the evidence does not reveal objective evidence of psychosis and, therefore, I find that this diagnosis is based upon the claimant's subjective allegations and is entitled to little weight.

(Tr. 17).

A treating physician's opinion is given controlling weight if the "opinion on the issue(s) of the nature and severity of your [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §404.1527(d)(2). As the Seventh Circuit recently has noted, the regulations governing the weight given to a treating physician's opinion "depends on the circumstances." Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006).

In assessing the Plaintiff's mental condition, ALJ Brezina relied on the analysis of agency doctors Stephen Vincent and Harry Deppe (Tr. 16-17). He noted that these evaluations, on August 16, 2001 and February 2, 2002, respectively, did not reveal "significant mental limitations that would preclude her from performing simple unskilled work activity of a sustained basis" (Tr. 16-17). The Plaintiff does not challenge these conclusions.

Dr. Vincent's mental status evaluation, conducted on August 16, 2001, resulted in a diagnosis of "Axis I: Major Depression, Single Episode, Moderate. Dysthymic Disorder"[3] (Tr. 190). He states that the Plaintiff "comes with a long-standing history of chronic subclinical depression which at the present time appears to reach major depressive-like proportions as a result of psychosocial stressors . . ." (Tr. 189-190). He goes on to state, however, that "She is not psychotic. She is not being seen by a psychologist or psychiatrist at this time" due to a recent move (Tr. 190). Dr. Deppe also diagnosed the Plaintiff Dysthymic Disorder and Posttraumatic Stress Disorder (PTSD) in Axis I and have her a Global Assessment of Functioning 60 (Tr. 217). He specifically states that she did not exhibit delusional thinking nor

---

[3] This disorder is defined as "a chronic mood disorder manifested as depression for most of the day, more days than not" accompanied by various symptoms. STEDMAN'S MEDICAL DICTIONARY 556 (27th ed. 2000).

did she have episodes of hallucinations (Tr. 215). She also was "able to understand what was said to her as the responses were appropriate and on task for topics discussed" (Tr. 215). However, the Plaintiff also reported difficulty sleeping due to past sexual abuse and her physical ailments (Tr. 215). Dr. Deppe concluded that she had a fair ability to relate to coworkers, a fair ability to withstand the stressors of work, a fair ability to care for her personal needs, and fair social functioning. (Tr. 216). He also noted an intact ability to understand direction and maintain attention on simple, repetitive tasks (Tr. 216). Finally, Dr. Deppe noted a mild/moderate ability to change her interests and habits due to her impairment and a mild/moderate restrictions on her daily living activities (Tr. 216).

On January 23, 2002, the Plaintiff was seen by Tim Morthland MS III (who appears to work with Dr. Elliston) (Tr. 278-278). During this session, the Plaintiff was diagnosed with Major depressive episode, with psychotic[4] features and PTSD (Tr. 279). This evaluation was repeated on March 22, 2002, April 24, 2002, Mary 24, 2002 (Tr. 242, 273-275). During these evaluations, the Plaintiff complained of sleeplessness and depression but generally denied suicidal or homicidal thoughts. Indeed, the April 24, 2002 report also indicates that "Thought contact is without evidence of psychosis, suicidal ideation, or homicidal ideation at this time" (Tr. 273). In July 3, 2002, the psychiatry notes conspicuously state that the Plaintiff reports that she is "'Doing a lot better, best I've felt in years" with "ups + downs" and improved sleep. (Tr. 236). The note also states "Psychotic sx's resolved" with addition of Seroquel (Tr. 236).

---

[4] Psychosis is defined as "A mental and behavioral disorder causing gross distortion or disorganization of a person's mental capacity, affective response, and capacity to recognize reality, communicate, and relate to others to the degree of interfering with the person's capacity to cope with the ordinary demands of daily life." STEDMAN'S MEDICAL DICTIONARY 1478 (27th ed. 2000).

Nonetheless, an October 2, 2002 indicates a backslide as the Plaintiff notes that she was not doing as well and is not sleeping as well. (Tr. 224).

ALJ Brezina is correct in noting that the marked limitations offered by Dr. Elliston were in contradiction to the fair and mild/moderate limitations suggested by Dr. Deppe. ALJ Brezina was entitled to lessen the weight given to Dr. Elliston's opinion as he noted that the Plaintiff offered contrary information regarding her prescription to him and because Dr. Deppe did not note the level of mood abnormalities that Dr. Elliston noted a few days earlier (in the January 23, 2002 evaluation). ALJ Brezina also noted that Dr. Elliston's limitations were inconsistent with, for example, Dr. Biale's analysis which was discussed in a previous paragraph of the opinion. As noted above, even if this Court were to find, upon review, that Dr. Elliston's analysis of the Plaintiff is more credible than Dr. Deppe's or Dr. Biales, this Court may not substitute its judgment for that of the ALJ. White, 415 F.3d at 659.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision denying benefits is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

**DATED: March 31, 2006**

**s/ Donald G. Wilkerson**
**DONALD G. WILKERSON**
**United States Magistrate Judge**
